LEE, C.J.,
for the Court:
¶ 1. This appeal addresses the sole issue of whether Albert Rhoads’s injury arose out of the course and scope of his employment. The administrative judge (AJ) found that the injury was within the course and scope of Rhoad’s employment, and the Mississippi Workers’ Compensation Commission (the Commission) affirmed the AJ’s order.
FACTS AND PROCEDURAL HISTORY
¶ 2. Rhoads began working for Performance Tire & Wheel (Performance) around March 2010 as a tire and lube technician. Rhodes testified that on April 26, 2010, he attempted to change the tire on a furniture/rental van. ■ When he removed the tire from the van and picked it up, he felt a snap in his back and immediately reported the incident to Rethany Donnell Harris, the shop supervisor. Rhoads testified that Harris took him to report the incident to Donald Barefoot, the store manager. Rhoads stated that he asked Barefoot if he could leave work to go to the hospital. Rhoads went to the emergency room at Memorial Hospital, where he was prescribed pain medication and released. Rhoads returned to the hospital later that night, because he was in severe pain. According to medical records, Rhoads was instructed to remain off work for two days. The next morning, Rhoads slept late due to the medication he was taking. When he brought his off-work slip to Barefoot, Barefoot informed him that he no longer had a job, because he had failed to call before 7:30 a.m. to inform anyone that he would be late.
¶ 3. Harris also testified that Rhoads emerged from beneath the van and stood up, and his back was bothering him. Harris then escorted Rhoads to Barefoot to report the incident. Harris testified that Barefoot later approached him and inquired about the incident, asking him if he had seen Rhoads pick up a tire and hurt his back. Harris testified that he never saw Rhoads change the tire. Harris also testified that he believed Chad Wilson had changed the tire, because his signature was on the form denoting the completion of the job. However, Harris never saw Wilson change the tire.
¶ 4. When Barefoot was called to testify, he stated that although Harris had brought Rhoads into his office, Rhoads never told him that he was injured while picking up a tire at work. Instead, Rhodes told Barefoot that his back was hurting and asked if he could go to the hospital. Barefoot was clear to testify that Rhoads “never once told me he hurt his back[;] he said his back was hurting.” However, Barefoot stated he did not specifically ask if Rhoads had injured his back while working on a vehicle. Barefoot claimed that the first time he learned of the alleged work-related injury was when he was contacted by Rhoads’s attorney. Barefoot denied that Rhoads ever presented him with an off-work slip from Memorial Hospital.
¶ 5. Derrick Wright, who was directly supervising Rhoads that morning, testified that he did not remember the tire being changed on the van. He was not present during any conversation between Rhoads and Harris. Wright also stated that Bare *1264 foot asked him to prepare an account of the incident on the following day. He claimed that Barefoot also asked him to include any other information about conversations he had with Rhoads while Rhoads was working there.
¶ 6. Medical records from Memorial Hospital were also presented showing that Rhoads did receive treatment for lower-back pain twice on April 26, 2010. Medical records from Dr. Horrell Townsend, Rhoads’s treating physician, were also presented, which diagnosed Rhoads with an acute lumbar strain. Dr. Jack Moriarity, who saw Rhoads at the request of Performance for an Employer’s Medical Exam (EME), stated he thought Rhoads had suffered a work-related injury.
¶ 7. The AJ found that Rhoads had sustained a compensable work-related injury. Additionally, the AJ found that “[t]he testimony of [Rhoads] was definitely more credible than that of Don Barefield [sic], the store manager.” Performance appealed to the Commission, which affirmed the AJ’s findings. This appeal followed.
STANDARD OF REVIEW
¶ 8. This Court limits its review of an appeal from the Commission to “determining whether the Commission erred as a matter of law or made findings of fact contrary to the overwhelming weight of the evidence.” Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010). Reversal of the Commission’s order is only proper when it “is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law.” Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss.Ct.App. 2003). This Court must affirm “[i]f there is substantial evidence to support the Commission, absent an error of law[.]” Shelby v. Peavey Elees. Corp., 724 So.2d 504, 506 (118) (Miss.Ct.App.1998) (internal quotations omitted). The Mississippi Supreme Court has defined substantial evidence as
something more than a “mere scintilla” of evidence, [which] does not rise to the level of a preponderance of the evidence. It may be said that it means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.
Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991) (internal quotations omitted). “Our role is not to determine where the preponderance of the evidence lies when the evidence is conflicting, since it is presumed that the Commission, as trier of fact, has previously determined which evidence is credible and which is not.” Johnston Tombigbee Furniture, 43 So.3d at 1164 (¶ 16) (internal quotations omitted).
DISCUSSION
¶ 9. Performance asserts that the Commission erred by affirming the AJ’s findings, because those findings were not based on substantial evidence. “Where, as here, the Commission adopts the findings of the [AJ] without presenting its own findings of fact, this Court will examine the findings of fact made by the [AJ].” Mueller Copper Tube Co. v. Upton, 930 So.2d 428, 434 (¶ 25) (Miss.Ct.App.2005).
¶ 10. Under Mississippi Code Annotated section 71-3-1(3) (Supp.2012), a worker may seek temporary or permanent disability benefits if he has suffered a work-related injury. Mississippi Code Annotated section 71-3-3(b) (Rev. 2011) defines an injury as an “accidental injury ... arising out of and in the course of employment. ...” For the injury to arise out of and in the course of employment, there *1265 must be “a causal connection between the employment and the injury.” Total Transp., Inc. of Miss. v. Shores, 968 So.2d 456, 461 (¶ 7) (Miss.Ct.App.2006). “One is injured in the course of employment when an injury results from activity actuated partly by a duty to serve the employer or reasonably incident to the employment.” Id. (citations omitted).
¶ 11. Performance argues that Rhoads’s testimony regarding his injury was untrustworthy because no one saw him pick the tire up and injure his back. Performance cites to White v. Superior Products, Inc., 515 So.2d 924, 927 (Miss.1987), to support this contention. However in that case, White did not inform anyone of his injury at the time he claimed the injury occurred. Additionally, the supreme court affirmed the Commission’s finding of fact that White’s testimony was untrustworthy. Here, that is not the case. Rhoads informed his supervisor, Harris, immediately following the injury. In fact, Harris testified that Rhoads emerged from beneath the van, stood up, and stated that his back was bothering him. Also, both Rhoads and Harris testified that Harris took Rhoads to the store manager, Barefoot, to report the injury.
¶ 12. The only contradictory evidence presented that Rhoads failed to report the injury was by Barefoot, who claimed that Rhoads never said he hurt his back. However, Barefoot did admit that Rhoads complained of his back hurting. The AJ weighed the credibility of the witnesses, and specifically noted, “The testimony of [Rhoads] was definitely more credible than that of [Barefoot], the store manager.”
¶ 13. Performance also asserts that a surveillance video of Rhoads directly contradicts Rhoads’s contention that he suffered a work-related injury. A surveillance video depicting Rhoads assisting his neighbor with underpinning the skirting on the neighbor’s trailer was submitted before the AJ. Although Rhoads testified that he did not perform any work on the trailer, the video shows Rhoads squatting, bending and twisting at the waist, using a hammer, lifting some material, and walking without a cane. Performance obtained an EME opinion from Dr. Moriarity, who also watched the surveillance video of Rhoads. In his affidavit, Dr. Moriarity contended that the extent of Rhoads’s injury did not appear to be as severe as Rhoads reported; however, he also stated, “I do think [Rhoads] suffered a work-related injury....”
¶ 14. Performance attacks Rhoad’s veracity by highlighting the inconsistencies between Rhoads’s petition to controvert and his testimony. In his petition to controvert, Rhoads stated that he “could not stand up due to the severe pain in his back.” During his testimony, however, Rhoads did not contend that he was unable to stand. This discrepancy, along with the surveillance video, go to the extent of the injury and not to discredit that a work-related injury occurred.
When the testimony is undisputed and not so unreasonable as to be unbelievable, taking into account the factual setting of the claim, the claimant’s testimony generally ought to be accepted as true. Likewise, the Commission, sitting as judge of the credibility of the witnesses, has the authority to accept or reject testimony....
Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 449 (¶15) (Miss.Ct. App.1999) (internal citation omitted). The Commission affirmed the AJ’s order. The AJ stated specifically that she was “persuaded by the evidence as a whole” and that “[t]he testimony of [Rhoads] was definitely more credible than that of [Barefoot], the store manager.” The Commission’s decision was not contrary to the overwhelming weight of the evidence.
*1266 ¶ 15. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.